## JASPER COUNTY LUMBER CO. v. SMITH et al.

### No. 3115.

Court of Civil Appeals of Texas. Beaumont.

Feb. 11, 1938.

Rehearing Granted March 30, 1938.

Further Motion for Rehearing Overruled April 27, 1938.

Richardson & Lanier, of Jasper, Davis, Avery & Wallace, of Center, and Williams, Lee, Sears & Kennerly, of Houston, for appellant.

Synnott & Smith, of Jasper, and C. A. Lord, of Beaumont, for appellee.

COMBS, Justice.

This is the third appeal of this case. See Smith v. Jasper County Lumber Co., Tex.Civ.App., 46 S.W.2d 430; Id., 124 Tex. 156, 76 S.W.2d 505; Jasper County Lumber Company v. Smith, Tex.Civ.App., 91 S.W.2d 834.

The suit involves title to merchantable timber on 408 acres of land in Jasper county. Appellees, to whom we will refer as the Smiths, owned the land. In 1922 they executed a timber deed, conveying the timber on it to A. J. Peavy, trustee. The deed gave the grantee, his successors and assigns, 15 years from the date of the deed in which to cut and remove the timber. The deed further provided:

"2. It is further understood and agreed that after the entry upon said land and the cutting and removal of said timber therefrom by the grantee, his successors or assigns, all of the right, title and interest whatsoever of grantee, his successors or assigns, shall revert to grantors, their heirs or assigns, except the right-of-way privileges herein conveyed.

"3. It is further understood and agreed that when said grantee, his successors or assigns shall have cut over and abandoned said land one time, the timber then remaining thereon shall revert to grantors, their heirs and assigns."

The title to the timber conveyed by said deed passed to the Jasper County Lumber Company, to which we will hereafter refer as the Lumber Company. At various times up to about the first part of the year 1930 the Lumber Company entered upon and cut timber from the land. The testimony of expert timber men, who based their estimates on measurements made on the ground, shows that the Lumber Company cut a total of 555,925 feet and that 2,541,573 feet of merchantable timber is still standing on the land. The evidence shows that the cutting was limited to pine, white oak, and ash. Of the pine, 64,093

feet were cut and 272,483 feet are still standing; of the white oak, 248,398 feet were cut and 341,761 are standing; of the ash, 236,643 feet were cut and 179,035 feet are standing. There are 407,055 feet of red oak standing, none cut, and 843,914 of red gum standing and none cut. Other varieties of timber in small quantities remain, none of which has been cut. The proof shows that the cutting was general over the land. On the whole tract of 408 acres there are approximately 50 or 60 acres made up of several small tracts here and there on which no timber has been cut.

The evidence was reviewed at length in the opinion of Justice O'Quinn on the first appeal. 46 S.W.2d 430. In every material respect the testimony is the same. On this trial as on the first, the Lumber Company offered evidence that it had no intention of abandoning the timber and that it has continued to render and pay taxes on it. We here make reference to the opinion of Justice O'Quinn, cited supra, for a more complete statement of the facts.

In the early part of 1930 the Smiths entered upon the land and began cutting the timber, asserting title thereto on the ground that the Lumber Company had cut over and abandoned the timber and that title to the remaining timber had reverted to them under the provisions of the deed above quoted. The Lumber Company instituted this suit, asserting its title, and by cross-action the Smiths pleaded their title based on the theory of abandonment.

Reference to the former opinions will show that upon the first trial the trial court instructed a verdict for the Lumber Company on the ground that no issue of abandonment was raised by the evidence. That judgment was affirmed by this court. A writ of error was granted by the Supreme Court and the judgments of this and the trial court reversed and the cause remanded, the Commission of Appeals holding, among other things, that the evidence raised an issue of abandonment. 124 Tex. 156, 76 S.W.2d 505. The second trial resulted in a jury finding in favor of the Smiths on the issue of abandonment. This court reversed the judgment because of procedural errors. 91 S.W.2d 834. On the present trial the trial court submitted the case to the jury on the following three issues, to which the jury returned the answers indicated:

(1) "Do you find from a preponderance of the evidence that Jasper Lumber Company has cut-over and abandoned the land described in the pleadings in this one time?" To which the jury answered "Yes."

(2) "Do you find from a preponderance of the evidence that plaintiff, and its predecessors in title, Jasper County Lumber Company, has claimed the timber in controversy at all times since the year 1923?" To which the jury answered "No."

(3) "Do you find from a preponderance of the evidence that it has been the intention of plaintiff, and its predecessor in title, Jasper County Lumber Company, at all times since 1923, to cut and remove the timber in controversy prior to the 31st day of October, 1937?" To which the jury answered "No."

The Lumber Company's motion for instructed verdict and for judgment non obstante veredicto was overruled and judgment entered in favor of the Smiths. This appeal is from that judgment.

## Opinion.

Counsel for appellant have filed a lengthy and interesting brief, presenting many assignments and propositions. But with the exception of complaints as to the court's charge, which we will notice later, it all sums up to the contention that the evidence did not raise an issue of abandonment against it and was wholly insufficient to sustain the jury's findings on that issue.

Such contentions must be overruled. On the first appeal this court agreed with appellant's contention and held that the issue of abandonment was not raised. In so holding this court committed error. On the very facts now before us Mr. Justice Ryan, speaking for the Commission of Appeals, opinion adopted by the Supreme Court, held, in reversing our judgment:

"There was sufficient evidence (quoted by the Court of Civil Appeals and unnecessary to repeat here) to take the question of abandonment to the jury, although it be conceded that the various cuttings of timber by grantee were not of all the kinds of timber on certain portions of land, and that under the contract it was not required that all the timber should be cut at one continuous cutting nor that when one kind of timber was cut all the other kinds must be cut at the same time. * * *

"The extent of the cutting within the contract period was optional with the gran-

tee, but, when he abandoned the land whether all or only a portion of the timber had been cut, the clause in question applied. The question of abandonment is one of fact based on competent evidence, to be submitted to the jury. 1 Tex.Jur. p. 13.

"The question presented in the trial court was whether the land had been cut over and abandoned, and this issue should, as stated above, have been submitted to the jury." Smith v. Jasper County Lumber Co., 124 Tex. 156, 76 S.W.2d 505, 508.

As remarked above, the evidence is the same on this appeal as on the former with the immaterial exception that the amount of timber cut was shown on the first trial by approximate estimates, and on the present trial the witnesses testified from actual measurements. These measurements in no wise change the former testimony but instead show its approximate accuracy. The holding of our Supreme Court on the facts is the law of this case.

Appellant complains of the court's charge where it defines "cut-over" as meaning "the cutting of the timber generally over the land, without regard to the amount or character of the timber cut," on the ground that no issue was raised that the land had been cut over, and, further, the definition was a general charge. We think the charge was not subject to objection. The evidence with reference to the extent of the cutting was without conflict. The land had been "cut-over" generally. The definition given was in accordance with the opinion of the Commission of Appeals and with the direction of this court. See opinion of Chief Justice Walker, 91 S.W.2d 834, 835, 836.

We do not think that issue No. 1, set out above, was duplicitous in inquiring whether the land had been "cut-over and abandoned." It submitted the one and only issue in the case. And with the appropriate definitions which the trial court gave of "cut-over" and "abandoned" presented the issue clearly and simply.

There are numerous exceptions to the charge of a similar kind, and to review each would unnecessarily prolong this opinion. We have carefully considered all of them and concluded that the trial court committed no reversible error. The judgment is affirmed.

O'QUINN, Justice (dissenting).

I am unable to agree with my brethren that this judgment should be affirmed. The controlling question is one of abandonment.

I shall not undertake to restate the facts disclosed by the record. For a full statement of all the facts, reference is made to the records on former appeals. See Smith v. Jasper County Lumber Co., Tex.Civ.App., 46 S.W.2d 430; Id., 124 Tex. 156, 76 S.W. 2d 505; Jasper County Lumber Co. v. Smith, Tex.Civ.App., 91 S.W.2d 834. Also majority opinion herein.

The time limit for the removal of the timber was 15 years. The timber was bought and paid for in 1922. Before the limit for removal had scarcely half expired, this litigation arose on the claim of appellees that the land had been cut over and abandoned and the timber then standing had reverted to them. Under the facts as to the cutting over, as ruled by Cammack v. R-L Lumber Co., Tex.Civ.App., 258 S.W. 488, writ refused, the land had not been cut over. The holding on that question in that case was not in any manner overruled or modified by the decision of Judge Ryan in the instant litigation. 124 Tex. 156, 76 S.W.2d 505. It is still the law.

The finding of the jury on this trial that appellant had not claimed the timber at all times since 1923 is without any support in the evidence.

The finding of the jury that it was not the intention of appellant, and its predecessor in title, at all times since 1923, to October, 1937, to cut and remove the timber, is so against the overwhelming weight and preponderance of the evidence as to be wrong, and should not be permitted to stand.

The finding of the jury that appellant had abandoned its claim to the timber is so against the overwhelming weight and preponderance of the evidence as to be wrong, as a matter of law, and should not be permitted to stand. The testimony on this issue will not here be set out, but reference for same is made to the reports of the case on former appeals cited above, and to the additional facts recited by the majority herein. Furthermore, it is my opinion that appellant's exception to the court's charge in submitting the issue of abandonment to the jury was well taken, and that the overruling of said exception was erroneous. The charge reads: "Do you find from a preponderance of the evidence that Jasper County Lumber Company has cut over and abandoned the land described in the pleadings in this case one time?"

In connection therewith and as a guide to the finding on the question of abandonment, the court charged: "By the term

'abandoned', as it is used in this charge, is meant voluntarily left the land after cutting over it generally, with the intention then not to cut any other timber that might be still standing upon the land, such intention to be determined by the acts of Jasper County Lumber Company and all other evidence before you."

This charge was objected to by appellant for the reason, among others, that it did not confine the jury in their deliberations "as to when said alleged abandonment occurred to the years from 1924–1930 inclusive, though the evidence and undisputed proof and the facts this court has judicial knowledge of show that such abandonment, if any, occurred from 1924 to the first of 1931, when this suit was filed." The evidence reflects that the last cutting of timber by appellant was about the first of the year, 1930. The cutting was not continuous, but intermittent. On about December 30, 1930, the Smiths entered upon the land and began cutting the timber, asserting title on the ground that the lumber company had cut over and abandoned the timber and that the remaining timber had reverted to them. Appellant, January 5, 1931, instituted this suit asserting its title to the timber. It will be observed that this litigation has continuously been in the courts. It is believed that the charge above complained of was erroneous because it did not limit the jury on the question of abandonment to considering the events happening from and after the last cutting of timber by appellant up to the institution of this suit. There was no limitation given the jury as to what they might consider in determining the question of abandonment, but they were told they might consider "the acts of Jasper County Lumber Company and all other evidence before you." This charge was given on August 7, 1936, nearly six years after the suit was begun. Appellant had not cut any timber or made any effort to do so in that time for the good reason that the timber was in litigation and it could not do so. Can it be safely concluded that the jury did not consider this very fact as going to show an abandonment by appellant. Is it not more than likely that the jury did consider this lack of cutting as supporting the claim of abandonment? As pointing to this very situation, it is believed that the argument of counsel for appellees shows that counsel so interpreted the charge. One of counsel in his argument to the jury said: "They have not cut anything in seven years, the law presumes a man dead in that time." This argument was objected to by counsel for appellant, for the reason, among others, that it "involved a time since the suit was filed." This objection was overruled by the court. This could have and very likely did impress the jury that the charge authorized them to consider this inactivity on the part of appellant in determining their answer to the issue. Again, another of counsel for appellees in his argument to the jury on this question said: "They quit for years and years. Do you think there was a time during this time when they didn't intend to quit"? Counsel for appellant objected to this argument for the reason as stated before, which was overruled. In view of these repeated statements to the jury showing this very thought in the charge, and the repeated rulings by the court, can it be said with any degree of certainty that the jury did not so consider the charge and, in the language of the charge, use it as "other evidence before you," in answering the issue? Certainly, the interval between the filing of the suit early in 1931 to the giving of the charge July, 1936, during all of which time the timber was in litigation, and appellant could not, as a matter of law, cut the timber, could not and should not have been considered by the jury. It is believed that the charge without limitation, as it was, on the feature discussed, was error and probably caused the jury to return a wrong answer to the issue.

For the reasons stated, I think the judgment should be reversed and here rendered for appellant, or at least reversed and remanded.

## On Rehearing.

WALKER, Chief Justice.

On original submission I concurred in the opinion of Mr. Justice COMBS, affirming the judgment of the lower court. On review of the facts on rehearing, as against appellant's motion for rehearing, I find no material difference between the facts as developed on this appeal and on the two former appeals. It is my opinion, on authority of the former opinions, that all issues submitted to the jury have support in the evidence, and that the verdict of the jury has reasonable support.

However, I now concur with Mr. Justice O'QUINN in his criticism of the court's definition of the term "abandonment." The fact that appellant cut no timber from the land after the institution of this suit cannot be considered in support of the issue of "abandonment." The court's charge was broad enough to send this fact to the jury for its consideration, and the record shows, as reflected by the opinion of Judge O'QUINN, that the jury, by argument of appellees' attorneys, was directed to, and most probably did, consider it as evidentiary on the issue of abandonment.

Judge O'QUINN and I agree that the judgment of the lower court should be reversed and the cause remanded for a new trial, and it is so ordered. Judge COMBS enters his dissent.

Motion for rehearing granted, judgment of the lower court reversed, and cause remanded for a new trial.